HENRY W. WILLIAMS v. JAMES FLOOD, JAMES H. FLOOD, AND THOMAS P. FLOOD.

*Sale of standing timber—Parol extension of time for removal —Estoppel.*

Where the purchaser of *standing* timber paid in full for the same, and received a written contract, signed by the owner of the land, in which he sold and conveyed said timber to the vendee, with the undisputed right of removal for two years from its date, and the purchaser removed a portion of the timber, and before the expiration of the two years obtained from his vendor a *verbal* extension of one year in which to remove the balance, which time was again extended by a *like* agreement, before the expiration of the first extension, for another year,—

*Held*, that the parol agreement was *more* than a *revocable* license, and prevented the enforcement of the forfeiture so long as it lasted, as it was entirely inconsistent with it; and that during its term the owner of the land would be estopped from preventing the vendee from entering on the land and removing the timber.

*Held*, further, that *subsequent* grantees of the land, with notice of the vendee's rights, would occupy no better position than their grantor.

*Held*, further, that the case is not one requiring equitable relief, as interference with the timber was a *legal* wrong, and therefore open to redress by legal action.

Error to Berrien.  (Smith, J.)  Argued October 21, 1886. Decided November 4, 1886.

Case for conversion of timber.  Defendants James H. and Thomas P. Flood bring error.  Affirmed by an equal division of the Court.  The facts are stated in the opinion.

*N. A.-Hamilton* and *Edward Bacon*, for appellants:

The extensions were within the statute of frauds: *Abell v. Munson*, 18 Mich. 306; *Cook v. Bell*, Id. 393; and, if a valid license, it was terminated by the deed to appellants: *Max—*

*well v. Bay City Bridge Co.*, 41 Mich. 466; *Drake v. Wells*, 11 Allen, 141; *Carter v. Harlan*, 6 Md. 20; *Bridges v. Purcell*, 1 Dev. & Bat. 492; *Wescott v. Delano*, 20 Wis. 514; *Mendenhall v. Klinck*, 51 N. Y. 246; *Prince v. Case*, 10 Conn. 382; *Dark v. Johnston*, 55 Penn. St. 164.

The bill of sale conveyed no standing timber unless severed within two years: *Richards v. Tozer*, 27 Mich. 451; *Johnson v. Moore*, 28 Id. 5; *Haskell v. Ayres*, 32 Id. 94.

The standing timber being real estate, the value cannot be recovered in this personal action: *Guthrie v. Jones*, 108 Mass. 194, 196; *Raddin v. Arnold*, 116 Id. 271; *Longstaff v. Meagoe*, 2 Adol. & El. 167; *Wilde v. Waters*, 16 C. B. 637.

Plaintiff's remedy in equity was ample, if he had any rights in the timber: *Holcomb v. Mosher*, 50 Mich. 252.

*C. B. Potter* (*Clapp & Bridgman*, of counsel), for plaintiff:

The right of removal for two years was irrevocable: *Morrill v. Mackman*, 24 Mich. 282; *Greeley v. Stilson*, 27 Id. 157; *Johnson v. Moore*, 28 Id. 3; *Russell v. Myers*, 32 Id. 523; *Wait v. Baldwin*, 60 Id. 622.

If asportation had accompanied the cutting, trover would lie, and this usually determines the form of action: *Wood v. Elliott*, 51 Mich. 320.

If the clause giving right of removal had been omitted from contract, the exercise of same within a *reasonable* time would be implied: *Wood v. Elliott*, 51 Mich. 323; *Wait v. Baldwin*, 60 Id. 622.

CHAMPLIN, J. This is an action of trespass on the case, to recover the value of certain standing and down timber on a parcel of land described in plaintiff's declaration.

On the sixteenth day of September, 1882, James Flood, who is an uncle of the remaining defendants, was the owner in fee of the land, and on that day, by a writing under seal, sold to the plaintiff "all the standing timber from and over the size of nine inches in diameter on the stump, situated, standing, or being" upon the land in question.

The instrument contained the following clause:

"Giving and granting the said Henry W. Williams the *undisputed* right, for two years from this date, to enter upon the said premises and remove the said timber, the same as if

he, the said Henry W. Williams, was the owner in fee of said lands."

Williams went on, and took off a portion of the timber within the two years, and, before the time limited had expired, he agreed with James Flood, the owner of the land, verbally, for an extension of time for one year in which to cut and remove the balance. Before this extended time expired, he and Flood agreed upon another extension, to and including the winter of 1885–86. This agreement was also verbal, and both of them were without any new consideration passing from Williams to Flood.

November 27, 1885, the defendants purchased the lands upon which the trees were standing from their uncle, and received a deed executed on that day. It was not a full covenant warranty deed, but contained a covenant against the grantor's own acts. At the time of their purchase, however, they were fully informed that the plaintiff had purchased the timber, and that the time in which he was to cut and remove it had been extended by verbal agreement, as above stated.

Shortly after New Year's of 1886 the plaintiff commenced to cut the timber with a view of removing it, when he was forbidden to do so by defendants, who claimed to own the timber by virtue of their deed. Plaintiff desisted, and brought this action to recover the value of the timber, both standing and severed, left on the land covered by his bill of sale from James Flood.

The circuit judge instructed the jury to render a verdict for the plaintiff, but how much the verdict should be he left to the jury to determine under the testimony.

The jury returned a verdict in favor of the plaintiff for $546.33.

One of the principal questions presented for consideration is whether the limitation of time for the removal of the timber from the land is a covenant that the purchaser will re-

move the timber in two years, or a condition subsequent of the contract of sale, which, upon default, would terminate the right of removal, and revest the title to such timber as remained upon the land in the vendor. The question was raised, but not decided, in *Green v. Bennett*, 23 Mich. 464, as the facts of that case showed that the vendor had treated the limitation of time as a covenant, and had sued the vendee for a breach thereof, and obtained judgment.

In applying rules of construction, the language employed in the instrument, the circumstances under which the contract was made, and the purpose for which it was made, are to be taken into consideration. The operative words in the written agreement are:

"The party of the first part, for and in consideration of the sum of five hundred dollars, to me in hand paid by Henry W. Williams, the receipt whereof is hereby acknowledged, do, by these presents, sell, sign, and convey to the said Henry W. Williams all the standing timber," etc.

These words express the intention to sell and convey the standing timber as timber attached to and a part of the freehold, by which a present title was to pass, and cannot be construed into an executory agreement to sell and convey the timber when it should be thereafter severed. The agreement conveyed an interest in the land, and was such as the statute of frauds required to be in writing to be valid. *Russell v. Myers*, 32 Mich. 522; *Wetmore v. Neuberger*, 44 Id. 362; *Spalding v. Archibald*, 52 Id. 365; *Putney v. Day*, 6 N. H. 430; *Owens v. Lewis*, 46 Ind. 488; *Daniels v. Bailey*, 43 Wis. 566; *Slocum v. Seymour*, 36 N. J. Law, 138.

When conveyed, it was an interest in lands, and did not cease to be such thereafter until severance.

If the limitation as to time of removal should be construed as a covenant on the part of the purchaser that he would remove the timber in the time specified, the title to the timber would remain in the purchaser after the time limited

had expired, and he could still enter upon the premises, and remove the same at his pleasure, being liable to the vendor for such damages as he should cause in so doing. The vendor would also have a right of action against his vendee for a breach of the covenant in not performing the covenant as agreed. But it is perceptible, at a glance, that this might be a very inadequate remedy. The standing timber would be an incumbrance upon his land, and would deprive him of its use for agricultural purposes, and it would be a constantly recurring injury, quite incapable of estimation in dollars, and would depreciate the marketable value of his land while the timber remained. It cannot be claimed that the words employed in the agreement amount to an express covenant to remove the timber in the time named. Nor do I see that one is implied from the nature of the agreement.

It appears to me that the parties intended the one to sell and the other to purchase the standing timber, upon condition that it should be removed from the land within the time specified, and that the title to such as should remain upon the land at the expiration of the time should revest in the vendor; the effect of the whole transaction being a sale of so much of the timber as the vendee should remove from the land within the time limited in the agreement for its removal. That this was the intention of the parties, as expressed by the contract, is borne out by the conduct of the parties, who appear to have placed this construction upon it. The vendee asked for and obtained a verbal extension of the time upon two different occasions; and it is upon this extension of the time that the rights of the parties depend in this controversy. The breach of the condition worked a forfeiture of the plaintiff's right and title to the remaining timber.

That the vendor could waive the forfeiture or breach of condition cannot be disputed. That he did so in this instance cannot be denied, if it was competent for him to do so by parol. The defendants insist that the contract being of

that nature which the statute of frauds requires to be evidenced by writing, any extension of time in which it was to be performed must also be in writing, to be binding.  *Abell v. Munson,* 18 Mich. 306; *Cook v. Bell,* Id. 393.

This position would seem to be consistent with the rulings of this Court, holding that such a sale of standing timber conveys an interest in real estate, and is not valid unless in writing; for if the interest of the vendee in the standing timber would cease at the expiration of the time limited in the contract for its removal, the effect of the extension would be to grant a new or further interest in the land, and would require a contract in writing as much as the original contract.

If, however, the agreement for the extension was invalid as a contract, it would be good as a license, and a protection to the vendee for any act done under it until it was revoked. He would have the right to remove all the timber which he had cut up to the time the defendants forbid his cutting more; and, if they refused to permit him to enter upon their land for that purpose, it would, in law, amount to a conversion by them of the timber so cut.  They would not be liable in this action for the timber standing upon the land at the time the license was revoked.  This must be the result in an action at law; especially in those states where the jurisdiction of courts of law and equity is administered separately.  In some states, where the courts of law have equitable cognizance, relief is granted upon proper pleadings in common-law courts.  Courts of equity have, in proper cases, enforced a license, and restrained its revocation, where such revocation would operate as a fraud upon the licensee, or would be productive of great hardship, in such cases treating the license as an agreement to give the right.

The circuit judge rightly left it to the jury to find whether the defendants refused to permit the plaintiff to remove such of the timber as he had severed before the license was revoked,

but he was wrong in instructing them to return a verdict in favor of the plaintiff for the value of the standing timber.

The judgment should be reversed, and a new trial ordered.

MORSE, J., concurred.

CAMPBELL, C. J. The errors pressed on the argument are all within the scope of the considerations referred to by my Brother CHAMPLIN, and leave really nothing beyond the questions arising out of the extension of the contract.

In my opinion, it is not very important to discuss the exact nature of plaintiff's rights under the written contract. Whatever they were, they included an absolute sale of all the timber described, subject only to such qualifications of the right of removal as the contract mentions. At most, this condition would only operate by way of forfeiture. The timber had all been paid for, and all belonged to plaintiff unless lost by that forfeiture for non-removal. This being so, I think there is no more difficulty in showing a waiver of forfeiture in this than in any other case, whether the forfeiture relates to land, or its enjoyment, or any other interest. The parol agreement to extend the time for removal of plaintiff's own property was more than a revocable license. It prevented the enforcement of the forfeiture so long as it lasted, as it was entirely inconsistent with it. During that period plaintiff's vendor would be estopped from preventing him from entering the land and removing his property.

If the other defendants had taken title as *bona fide* purchasers without notice of plaintiff's claim, they might not be bound to respect it; but there is no doubt here that they purchased with full notice of all the facts, and they cannot be in any better position than their grantor.

The case is not one which requires equitable relief. The plaintiff's right relates to property which is tangible, and which is at least *intended* to become personalty, if not so already. Interference with it is a legal wrong, and therefore open to redress by legal action. The judgment, so far as he

is concerned, is for what was substantially a conversion of plaintiff's property, and should be affirmed.

SHERWOOD, J., concurred.